UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
ANDREA VASQUEZ,

                Plaintiff,

      - against -

EMPRESS AMBULANCE SERVICE, INC., and
TYRELL GRAY, Individually,

                Defendants.
---------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 8387 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court is the Rule 12(b)(6) motion of defendant Empress Ambulance Service, Inc. ("Empress"), to dismiss plaintiff Andrea Vasquez's claims of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), and the New York State Human Rights Law. The principal question presented by this motion is whether an employer is liable for unlawfully retaliating against a plaintiff employee when (1) the plaintiff reports that a co-worker has sexually harassed her, (2) the employer promptly investigates, (3) the co-worker deceives the employer with false information that inculpates both himself and the plaintiff in work-related misconduct, and (4) the employer, crediting that false information, fires the plaintiff. Vasquez argues that, under such circumstances, the co-worker's improper intent should be attributed to the employer under the so-called "cat's-paw"

theory.  For the following reasons, we disagree with Vasquez and grant Empress's motion.

## I.  BACKGROUND

The parties have submitted various exhibits that are extrinsic to the complaint.  Although we comment in the footnotes on two assertions in Empress's submission to the Equal Employment Opportunity Commission ("EEOC"), we do not rely upon those assertions in ruling on this motion to dismiss.  Neither party asks us to convert the motion into one for summary judgment, and we decline to do so.[1]

## A.  Factual Allegations

According to the Amended Complaint, whose factual allegations we accept as true, Vasquez worked for Empress as an emergency medical technician on an ambulance crew, and defendant Tyrell Gray worked for Empress as a dispatcher.  See Am. Compl. ¶¶ 13-14.  After Gray met Vasquez, he began to pursue her in a romantic or sexual manner, by asking Vasquez out on dates, attempting to flirt with her, putting his arm around her, and touching her shoulders.  See id. ¶¶ 14, 16.  Gray also sent text

---

[1]    Citations to the record refer to the Amended Complaint dated January 20, 2015, ECF No. 14 ("Am Compl."); Empress's memorandum of law dated February 18, 2015, ECF No. 19 ("Def.'s Mem."); the declaration of Debra L. Wabnik, Esq., dated February 18, 2015, ECF No. 18 ("Wabnik Decl."), and exhibits thereto; and plaintiff's Memorandum of Law in Opposition to Defendants' Motion To Dismiss dated March 11, 2015, ECF No. 22 ("Pl.'s Mem").

messages to Vasquez on her cell phone, although not on a regular basis.   See   id.   ¶ 17.   Gray's advances made Vasquez uncomfortable; she told Gray that she was in a relationship and was not interested in him, and otherwise she tried to ignore him.   See id. ¶ 16.

On January 8, 2014, Gray approached Vasquez at the office and again asked her out, which she again declined.   See Am. Compl. ¶ 18.   Gray then said to her, "I bet I can make you leave your man," and, "I'm going to send you something between you and me."   Id.   Vasquez ignored these statements.   See id.   Around midnight, while Vasquez was working an overnight shift, she received a message on her cell phone from Gray containing a picture of his erect penis and the caption, "Wat u think" [sic]. Id. ¶ 19.   Vasquez was disgusted and did not respond.   See id.

On the morning of January 9, 2014, at the end of Vasquez's shift, she returned to the Empress office and tearfully told a field supervisor about the unwanted photographic message.   See Am. Compl. ¶ 20.   The field supervisor told Vasquez to type up a complaint and email it to Elizabeth Shepard of the Empress human resources department, and two of Vasquez's supervisors, Scott Holland and Sheri Baia.   See id. ¶ 21.   Gray saw Vasquez as she was working on her complaint and surmised that she was in the process of reporting his misconduct.   See id. ¶¶ 22-23. Somewhat more than two hours later, Vasquez met with Shepard and

Baia, who heard Vasquez's account of what had happened, thanked her, and said that Empress "[didn't] tolerate this sort of behavior" and that they would "sort the situation out."  Id. ¶ 27.

Meanwhile, fearing discipline, Gray contrived to create the false impression that he and Vasquez were in a relationship. Gray told a co-worker, Almairis Zapata, that he was "afraid he was going to lose his job," and Gray asked Zapata to "lie for [him]" as a "favor" by telling Empress management about his supposed relationship with Vasquez.  Am. Compl. ¶ 25.  However, Zapata declined to participate in this deception.  See id. Next, Gray manipulated his iPhone so that the record of a conversation with someone else containing "consensually sexual text banter" appeared to have been a conversation with Vasquez. Id. ¶ 30; see also id. ¶ 39 ("This sort of manipulating text conversations can be easily achieved with an iPhone.").  Gray gave printed "screen shots of portions of this conversation" to Empress management.  Id. ¶ 31.

Gray's effort to mislead Empress management was successful. Later in the morning, Vasquez met with a committee consisting of Empress's owner, a union representative, and Shepard (collectively the "Committee" or "Empress Committee").  See id. ¶ 32.  Shepard told Vasquez:  "So we know the truth.  We know that you were having an inappropriate sexual relationship with

[Gray]." Id. ¶ 33. Shepard said that Gray had provided the Committee with proof including "a racy self-taken photo that [Vasquez] had sent to [Gray] in response to his penis photograph." Id. ¶ 34 (emphasis omitted). Shepard added that the Committee was in agreement that the racy photograph depicted Vasquez. See id. ¶ 35.[2]

Shocked, Vasquez denied the allegations against her. See Am. Compl. ¶¶ 33, 35. Vasquez also asked the Committee to show her the racy photograph that supposedly depicted her and to inspect her cell phone to see that she had not willingly engaged in sexual banter with Gray. See id. ¶¶ 35, 37. Both of these requests were denied. See id. In a sad irony, the Committee concluded the meeting by telling Vasquez that she was being fired because she had sexually harassed Gray. See id. ¶ 38.[3]

## B.  Procedural History

On October 21, 2014, after receiving a right-to-sue letter from the EEOC, Vasquez commenced this action against Empress and Gray. On January 20, 2015, following a pre-motion telephone conference with the Court and counsel for Vasquez and Empress in

---

[2]     Vasquez, who is Hispanic, now alleges that the racy photograph "was by no means unequivocally of [Vasquez]," and that the woman in the photograph is African American. Am. Compl. ¶ 36.
[3]     Empress subsequently told the EEOC that it fired both Vasquez and Gray for violating company policy:  Vasquez by "providing Empress with false and misleading information in her complaint and during its investigation," and Gray by "sending sexually explicit text messages." Wabnik Decl. Ex. 1, at 6.

which the adequacy of the original complaint to state a claim under the cat's paw theory was discussed, Vasquez filed the Amended Complaint.

Against Empress, the Amended Complaint asserts claims for retaliation under Title VII and the New York State Human Rights Law.[4]  On February 18, 2015, Empress filed the instant motion to dismiss those claims.  On March 25, 2015, the motion was fully briefed.  On April 14, 2015, the Court heard oral argument.

## II. PLEADING STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  See Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014).  However, "we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)).  To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 at 678 (quoting Twombly, 550 U.S. at 570).

---

[4]     In her opposition memorandum, Vasquez clarifies that a third count of the Amended Complaint, alleging aiding and abetting discrimination under the New York State Human Rights Law, is asserted only against Gray.  See Pl.'s Mem. 21.

The Second Circuit recently clarified that, at the motion to dismiss stage, a Title VII plaintiff's allegations "need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas[ Corp. v. Green, 411 U.S. 792 (1973)] in the initial phase of a Title VII litigation." Littlejohn v. City of N.Y., No. 14-1395, ___ F.3d ___, ___, 2015 WL 4604250, at *11 (2d Cir. Aug. 3, 2015). Except as discussed herein, Empress does not dispute that Vasquez has pleaded a prima facie case of retaliation. See Def.'s Mem. 7 n.3.

### III. DISCUSSION

In a cat's paw case (also known as a "subordinate bias" or "rubber stamp" case), an employer is held liable for an adverse employment decision made by an agent of the employer (usually called the "decisionmaker") who lacks any improper motivation but who acts on the basis of a recommendation from or information provided by another, unlawfully motivated agent (whom we will call the "biased person").[5] See Staub v. Proctor Hosp., 562 U.S. 411 (2011); Cook v. IPC Int'l Corp., 673 F.3d 625, 628 (7th Cir. 2012); Nagle v. Marron, 663 F.3d 100, 117 (2d

---

[5]     The "cat's paw" metaphor derives from the fable attributed to Aesop in which a wily monkey flatters a cat into swiping chestnuts from a fire for the two of them to share.  As quickly as the cat can fetch the nuts, the monkey gobbles them up, leaving poor cat with nothing but a burnt paw for its trouble.  From this story comes the expression "cat's paw," meaning a sort of dupe, namely "[a] person used as a tool by another to accomplish a purpose." 2 Oxford English Dictionary 992 (2d ed. 1989).

Cir. 2011).  The rationale of the cat's paw theory is that an employer should not be permitted to "shield itself from liability . . . by using a purportedly independent person or committee as the decisionmaker where th[at] decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her lawful design."  Siani v. State Univ. of N.Y. at Farmingdale, 7 F. Supp. 3d 304, 327 (E.D.N.Y. 2014) (quoting Dedmon v. Staley, 315 F.3d 948, 949 n.2 (8th Cir. 2003)).  Here, Vasquez argues that she has a Title VII retaliation claim, see 42 U.S.C. § 2000e-3(a), because Gray, intending to retaliate against Vasquez for reporting his harassing behavior, used the Empress Committee as his cat's paw. Vasquez does not argue that Empress is liable on any other theory, and her opposition memorandum of law expressly disclaims a hostile work environment theory.

As a preliminary matter, although Empress does not dispute the general applicability of the cat's paw theory to Title VII claims, we note that neither the Supreme Court nor the Second Circuit has yet "explicitly adopted" the cat's paw theory in that context.  Gomez v. City of N.Y., No. 12 Civ. 6409, 2014 WL 4058700, at *4 (S.D.N.Y. Aug. 14, 2014); see, e.g., Wright v. City of Syracuse, No. 14-1635, ___ F. App'x ___, ___ n.2, 2015 WL 1727169, at *2 n.2 (2d Cir. Apr. 16, 2015).  However, the Supreme Court's decision approving of the cat's paw theory arose

under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), a statute which "is very similar to Title VII." Staub, 562 U.S. at 417. Moreover, the Second Circuit has long held that "a Title VII plaintiff is entitled to succeed, 'even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process.'" Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)); see also Jamieson v. Poughkeepsie City Sch. Dist., 195 F. Supp. 2d 457, 474 (S.D.N.Y. 2002) ("[T]he impermissible bias of a single individual can infect the entire group of collective decisionmakers."). Such an approach is "fully consistent" with the cat's paw theory. Irizarry v. United Parcel Serv., Inc., No. 11 Civ. 1658, 2014 WL 1246684, at *13 (D. Conn. Mar. 24, 2014). Further, district courts in this Circuit have expressly concluded that the cat's paw theory is viable under Title VII, and we are aware of none that have rejected it. See, e.g., Rajaravivarma v. Bd. of Trs. for Conn. State Univ. Sys., 862 F. Supp. 2d 127, 148-50 (D. Conn. 2012) (under Title VII); Gomez, 2014 WL 4058700, at *4 (under 42 U.S.C. § 1981). Thus, we follow the "substantial weight of authority . . . that a cat's paw theory will support entity

liability for retaliation under Title VII," <u>Smith v. Bray</u>, 681 F.3d 888, 899 (7th Cir. 2012).

We turn to Empress's arguments that the cat's paw theory does not apply to this case. Restated for clarity, Empress's principal arguments are: (1) that Vasquez has not plausibly pleaded that Gray acted with retaliatory intent, and in the alternative (2) that because Gray was not Vasquez's supervisor, he was not in the class of persons whose retaliatory intent may be attributed to Empress.[6]

## A. Gray's Retaliatory Intent

First, Empress argues that the allegation of the Amended Complaint that Gray "intended for his actions to cause [Vasquez] to suffer an adverse employment action," Am. Compl. ¶ 40, should not be credited both because it is conclusory and because it is contradicted by the allegations that Gray's true purpose was to avoid discipline, <u>see, e.g.</u>, <u>id.</u> at ¶ 25 (Gray "told Zapata that he was afraid he was going to lose his job"); <u>id.</u> at ¶ 40 (Gray "feared he was going to potentially suffer [an adverse employment action]"). We disagree.

---

[6] Although the parties characterize Empress as arguing against the "causation" element of a prima facie retaliation case, here there could be no serious question that Gray's actions proximately caused Vasquez to be fired. The real issue, as discussed in Part III.B below, is whether Gray's intentions can be imputed to Empress. Different facts might have presented a more challenging question of causation. <u>See</u> <u>Staub</u>, 562 U.S. at 419 (discussing proximate causation requirement of cat's paw liability).

At the motion to dismiss stage, a plaintiff's burden to plead retaliatory intent is satisfied by pleading facts sufficient to "plausibly allege[] a causal connection between . . . protected activities and the adverse employment action." Littlejohn, ___ F.3d ___, ___, 2015 WL 4604250, at *12.  In other words, "it is sufficient to allege facts from which a retaliatory intent on the part of the defendant[] reasonably may be inferred."  Gagliardi v. Vill. of Pawling, 18 F.3d 188, 195 (2d Cir. 1994).

Here, the plaintiff's minimal burden to plead retaliatory intent is more than satisfied by the Amended Complaint's portrayal of Gray as an spurned suitor with disdain for workplace norms of civility who, immediately after learning that Vasquez was reporting his misconduct, contrived a false account of Vasquez's behavior that implied that her accusation had been less than truthful and that had the actual effect of causing Empress to fire her immediately.  See Am. Compl. ¶¶ 22-25, 30-31.  Gray's intent to retaliate against Vasquez can plausibly be inferred from these allegations.  Moreover, Gray's obvious motive of self-preservation is not inconsistent with a retaliatory intention.  That Gray asked Zapata to help him save his job, see id. ¶ 25, does not mean that he did not wish also to punish Vasquez.  Self-preservation can coexist with revenge.

**B.   Imputation of Gray's Retaliatory Intent to Empress**

Empress's second argument is that a cat's paw claim is only viable where the biased person who influences the adverse employment discrimination is the plaintiff's supervisor, and not, like Gray, a mere co-worker.   Vasquez responds that "the impermissible bias of <u>any</u> employee, and not just individuals with supervisory roles, may impose liability upon the employer in Cat's Paw cases."  Pl.'s Mem. 11 (emphasis in original).

The issue of which improperly motivated employees may subject their employer to cat's paw liability, which is unsettled in this Circuit and elsewhere, must be considered against the background of two fundamental principles of employment law.  First, because a court "does not sit as a super-personnel department that reexamines an entity's business decisions," <u>Scaria v. Rubin</u>, 117 F.3d 652, 655 (2d Cir. 1997) (internal quotation marks omitted), an employer acting in good faith is not liable for a mere mistake in judgment, <u>see</u> <u>Gorley v. Metro-North Commuter Railroad</u>, No. 99 Civ. 3240, 2000 WL 1876909, at *7 (S.D.N.Y. Dec. 22, 2000), <u>aff'd</u>, 29 F. App'x 764 (2d Cir. 2002).  Thus, "that an employer incorrectly found an employee guilty of misconduct is insufficient to prove retaliation." <u>Jones v. Se. Pa. Transp. Auth.</u>, No. 14-3814, ___ F.3d ___, ___, 2015 WL 4746391, at *6 (3d Cir. Aug. 12, 2015). Second, because an employer is not "automatically liable" for

the discriminatory conduct of its employees, Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986), "a specific basis [must] exist[] for imputing the objectionable conduct to the employer," Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  Second, because a court "does not sit as a super-personnel department that reexamines an entity's business decisions," Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) (internal quotation marks omitted), an employer acting in good faith is not liable for a mere mistake in judgment, see Gorley v. Metro-North Commuter Railroad, No. 99 Civ. 3240, 2000 WL 1876909, at *7 (S.D.N.Y. Dec. 22, 2000), aff'd, 29 F. App'x 764 (2d Cir. 2002). Accordingly, "that an employer incorrectly found an employee guilty of misconduct is insufficient to prove retaliation." Jones v. Se. Pa. Transp. Auth., ___ F.3d ____, ____, 2015 WL 4746391, at *6 (3d Cir. Aug. 12, 2015).

Empress reads Staub to stand for the proposition that the cat's paw theory only applies where the biased person is a supervisor of the plaintiff.  In Title VII jurisprudence, the word "supervisor" is a term of art, not found in the statutory text, that courts have defined in the "highly structured framework" of sexual harassment claims.  Vance v. Ball State Univ., 133 S. Ct. 2434, 2446 (2013).  The Staub opinion, which does not engage substantially with that body of law, states explicitly that the Supreme Court "express[ed] no view as to

whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision." Staub, 562 U.S. at 422 n.4.[7] Thus, Staub provides no direct support for the limiting principle that Empress proposes. Moreover, the Second Circuit's repeated explanation that Title VII liability may lie where an employment decision was "taint[ed]" by the "impermissible bias of a single individual" who "played a meaningful role in the [decision] process," Bickerstaff, 196 F.3d at 450, implies that liability does not depend upon whether the biased person can be technically characterized as the plaintiff's supervisor.

Instead, the Staub Court made it pellucid that "general principles of . . . agency law" provide the basis for an employer's liability under the cat's paw theory. Staub, 562 U.S. at 418. As the Court explained, "[t]he employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." Staub, 562 U.S. at 421; see also id. ("Since a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it . . . ."). This rationale situates Staub

---

[7]     Empress cites Abdelhadi v. City of N.Y., No. 08 Civ. 380, 2011 WL 3422832, at *5 (E.D.N.Y. Aug. 4, 2011), aff'd, 427 F. App'x 44 (2d Cir. 2012), which relies on this language in Staub to support the proposition that "the biased individual must be a supervisor of the plaintiff." To the extent that Abdelhadi finds direct support for that conclusion in Staub, we are constrained to disagree.

within a long line of authority interpreting the "basic agency principles incorporated by statute into Title VII." EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 485 (10th Cir. 2006), cert. dismissed, 549 U.S. 1334 (2007); see, e.g., Vance, 133 S. Ct. 2434; Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998). It is well established that that "Congress' decision to define 'employer' to include any 'agent' of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." Meritor, 477 U.S. at 72. After Staub, there can be no doubt that the cat's paw theory of employer liability also is "based on agency principles." Kregler v. City of N.Y., 987 F. Supp. 2d 357, 368 (S.D.N.Y. 2013), aff'd, 604 F. App'x 44 (2d Cir. 2015).

In Staub, the Court addressed how agency principles limit the scenarios under which an employer may be subject to cat's paw liability: "[T]he employer would be liable only when the supervisor acts within the scope of his employment, or when the supervisor acts outside the scope of his employment and liability would be imputed to the employer under traditional

agency principles." Staub, 562 U.S. at 422 n.4 (citing Ellerth, 524 U.S. at 758).[8]

Accordingly, a subordinate's biased recommendation supports cat's paw liability when the subordinate acts within the "authority delegated by [his] employer," Staub, 562 U.S. at 422 (i.e., when the biased person acts within the scope of his employment), or when "the subordinate, although not formally delegated the power to make decisions, acts as the [employer's] agent," Nagle, 663 F.3d at 117 (i.e., when liability would be imputed under traditional agency principles). Either of these possibilities requires that the biased person, by virtue of his position or relationship with the employer or decisionmaker, "occupy a position of sufficient confidence . . . to be able to corrupt the determination at issue." Kregler, 987 F. Supp. 2d at 368. The biased person must play a "meaningful role," Bickerstaff, 196 F.3d at 450, as an "actor in the events" resulting in the adverse employment decision, Staub, 562 U.S. at 421, and not merely serve as an informant, "analogous to a witness at a bench trial," id.[9] Conversely, an employer is not

___

[8]  Although this passage in Staub uses the word "supervisor" to refer to the biased person, it is immediately followed by the following sentence, which we previously quoted:  "We express no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision."  Staub, 562 U.S. at 422 n.4.
[9]  As the concurring opinion in Staub put it, "[a] decisionmaker who credits information provided by another person -- for example, a judge who credits the testimony of a witness in a bench trial -- does not thereby delegate a portion of the decisionmaking authority to the person who provides

16

liable simply because it acts on information provided by a
biased co-worker.[10]  Cf. Vance, 133 S. Ct. at 2448 ("'[M]ost
workplace tortfeasors are aided in accomplishing their tortious
objective by the existence of the [employment] relation,' and
consequently 'something more' is required in order to warrant
vicarious liability.").

Applying these principles to the Amended Complaint, Vasquez
has not plausibly alleged any basis to impute Gray's retaliatory
intent to Empress.  First, Gray's manipulative conduct was well
outside the scope of his employment.  Far from being undertaken
as part of any "authority delegated by [his] employer," Staub,
562 U.S. at 422, or "actuated . . . by a purpose to serve the
employer," Ellerth, 524 U.S. at 756 (brackets and internal
quotation marks omitted), Gray acted entirely outside of his
role as an Empress employee when he deceived Empress during
Empress's investigation of Vasquez's accusation.

_____

the information." Staub, 562 U.S. at 425 (Alito, J., concurring in
judgment).  The majority did not disagree with this principle, and instead
distinguished a "biased supervisor" from a "mere witness." Id. at 421
(majority opinion).
[10]   Vasquez's strongest authority to the contrary is Johnson v. Koppers,
Inc., No. 10 Civ. 3404, 2012 WL 1906448 (N.D. Ill. May 25, 2012), aff'd, 726
F.3d 910 (7th Cir. 2013).  The Johnson district court concluded, based on
Seventh Circuit "dicta," that the distinction between supervisors and co-
workers "is not that significant," but went on to dismiss the claim on the
ground that there was no evidence that the co-worker in question possessed
discriminatory animus. Id. at *6-*7.  The Seventh Circuit affirmed the
dismissal of the claim for lack of evidence of animus without opining on the
legal question.  726 F. App'x at 915.  Neither court discussed the agency
principles that are central to Staub.  To the extent that the district
court's opinion can be read to suggest that the only requirement for
imputation of a biased person's unlawful intent to the employer is the
employment relationship itself, it is inconsistent with those agency
principles.

Second, not only did Gray lack authority, however broadly defined, delegated by Empress, it has not been suggested that Gray occupied any position of confidence within Empress or with the Empress decisionmakers.  Such a suggestion is particularly implausible given that Gray was himself under investigation for sexual harassment at the time that he misled the Empress Committee.  And the evidence that Gray provided -- which tended to inculpate Gray himself in the misconduct of exchanging "sexual banter" with a co-worker on duty -- could scarcely have improved his standing with the decisionmakers, or his ability to influence the decisionmaking process.[11]  Nor does the Amended Complaint plausibly allege that Gray played a meaningful role in the adverse employment decision.  Instead, Gray's position was quite akin to that of a (perjuring) witness at trial.  That Empress management credited his deceptive story is regrettable (assuming, as we must, that Vasquez's allegations are true), but an employer is not liable for retaliation simply because it was deceived.

Finally, we reject any suggestion that the law required Empress to make a more thorough investigation, to show Vasquez the evidence against her, or to review Vasquez's own cell phone at the time of termination.  See Drake v. Delta Air Lines, No.

---

[11]   Indeed, according to Empress's submission to the EEOC, Gray was hoist with his own petard when Empress fired him for this very reason.  See Wabnik Decl. Ex. 1, at 6.  If true, this further undermines Vasquez's argument that Gray had influence over Empress's decisionmakers.

94 Civ. 5944, 1997 WL 397498, at *3 (E.D.N.Y. July 10, 1997) ("[P]rivate at-will employers generally are under no obligation to provide employees with either a hearing or any other procedural rights prior to termination."). Moreover, Gray's version of the story, which featured an admission against Gray's own interest in avoiding discipline and was supported by documentary evidence, was not inherently or obviously unreliable. Tellingly, although Vasquez alleges that Gray's racy photograph was "by no means unequivocally of [Vasquez]," Am. Compl. ¶ 36, Vasquez does not deny that a reasonable observer could have concluded that the photograph depicted Vasquez.

In sum, because there is no basis in the allegations of the Amended Complaint to impute Gray's retaliatory intent to his employer or its decisionmakers, and thus Empress cannot be held liable for retaliation under the cat's paw theory.[12]


## CONCLUSION

For the foregoing reasons, Empress's motion to dismiss (ECF No. 17) is granted, and the claims against Empress are dismissed with prejudice.

---

[12]    Vasquez's opposition memorandum does not argue that a different standard applies under New York law, nor does it even mention her claim for retaliation under New York law. That state law claim against Empress is therefore dismissed for the same reasons as the Title VII claim.

Empress's request for attorneys' fees is denied.

**IT IS SO ORDERED.**

Dated:   New York, New York
         August 25, 2015

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiff**

Casimir J. Wolnowski, Esq.
Phillips & Associates, PLLC
45 Broadway, Suite 620
New York, NY 10006

**Attorneys for Defendant Empress Ambulance Service, Inc.**

Debra L. Wabnik, Esq.
David R. Ehrlich, Esq.
Stagg, Terenzi, Confusione & Wabnik, LLP
401 Franklin Avenue, Suite 300
Garden City, NY 11530